IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

IN RE: MARSHA W. HODGES                                                      CHAPTER 13
                                                                              NO. 17-50505-KMS

******************************************************************

WARREN CUNTZ, JR., AS CHAPTER 13 TRUSTEE                           PLAINTIFF
FOR THE BANKRUPTCY ESTATE OF DEBTOR,
MARSHA W. HODGES

V.                                                              ADV. PRO NO. _____

NEW PENN FINANCIAL, LLC D/B/A
SHELLPOINT MORTGAGE SERVICING,
SPECIALIZEDLOAN SERVICING, LLC,
THE BANK OF NEW YORK MELLON,
FKA THE BANK OF NEW YORK, AS                                       DEFENDANTS
TRUSTEE FOR THE CERTIFICATEHOLDERS
OF THE CWABS, INC., ASSET-BACKED
CERTIFICATES, SERIES 2006-24, and
BANK OF AMERICA, N.A.

## COMPLAINT SEEKING DAMAGES IN CORE ADVERSARY PROCEEDING

COMES NOW, Plaintiff, Warren Cuntz, Jr. As Chapter 13 Trustee for the bankruptcy estate of Marsha Hodges and files this complaint against New Penn Financial, LLC D/B/A Shellpoint Mortgage Servicing, Specialized Loan Servicing, LLC, The Bank of New York Mellon FKA The Bank of New York as Trustee for the Certificateholders of CWABS, inc. Asset-Backed Certificates Series 2006-24, and Bank of America, N.A.

## INTRODUCTION

1. This Action stems from the systematic mishandling of the Debtor's Mortgage prior to and during her Chapter 13 bankruptcy by the Defendants. This Action seeks a proper accounting of the Debtor's loan history from the date of modification to the date of the Debtor's filing for Chapter 13 relief and also seeks damages from certain defendants

resulting from violations of Bankruptcy Rules 3001 and 3002.1, sanctions against those defendants and damages resulting from violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 *et seq.*.

## JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court pursuant to the provisions of 28 U.S.C. §1334 in that this proceeding arises in and is related to the above-captioned Chapter 13 case under Title 11, and concerns property of the debtor in that case.

3. This Court has both personal and subject-matter jurisdiction to hear this case pursuant to 28 U.S.C. §1334, 28 U.S.C. §157(b)(2), and pursuant to the Order entered by the Judges of the United States District Court for the Southern District of Mississippi on July 23, 1984 (the Referral Order), which said Order was entered in accordance with the Bankruptcy Amendments and Federal Judgeship Act of 1984.

4. Pursuant to the Uniform Local Rules for the United States Bankruptcy Courts for the Northern and Southern Districts of Mississippi, Rule 7008-1, as amended December 1, 2016, the Plaintiff consents to the entry of a final order by the Bankruptcy Court.

5. Venue lies in this District pursuant to 28 U.S.C. §1391(b) and 28 U.S.C. §1409(a).

## PARTIES

6. The Plaintiff in this case is the Warren Cuntz, Jr., Chapter 13 Standing Trustee for the above styled and numbered Chapter 13 proceeding (hereinafter "plaintiff"). The Plaintiff has standing in this matter because this lawsuit concerns property of the estate.

7. The Debtor, Marsha Hodges (hereinafter referred to as the "Debtor"), was and is a debtor under Chapter 13 of Title 11 of the United States Code in case number 17-50505, which case is presently pending before this court.

8. The Defendant, NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING (hereinafter "Shellpoint"), is a foreign limited liability company formed under the laws of the State of Delaware, and registered to conduct business within and throughout the State of Mississippi. Shellpoint Mortgage Servicing is an operating division of New Penn Financial, LLC, with its main office located in Greenville, South Carolina. Shellpoint may be served with process by any of the following methods: by service on its registered agent, Corporation Service Company, 5760 I-55 North, Suite 150, Jackson, MS 39211; or by service at its principal address of 4000 Chemical Road, Suite 200, Plymouth Meeting, PA 19462.

9. Shellpoint is a "Servicer" as that term is defined by Regulation X, 12 C.F.R. 1024.2(b).

10. The Defendant, Specialized Loan Servicing, LLC (hereinafter "SLS"), is a Delaware corporation that maintains its principal place of business at 8742 Lucent Blvd. #300, Highlands Ranch, CO 80129 and may be served with process through its registered agent National Registered Agents, Inc., 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

11. SLS is a "Servicer" as that term is defined by Regulation X, 12 C.F.R. 1024.2(b).

12. The Bank of New York Mellon FKA The Bank of New York as Trustee for the Certificateholders of CWABS, inc. Asset-Backed Certificates Series 2006-24 (hereinafter "Bank of New York Mellon") is the purported owner of the Debtor's mortgage loan. Service of process. The Bank of New York Mellon is a federally insured depository institution that may be served in accordance with Rule 7004 by service of process by certified mail addressed to an officer of the institution.

13. The Defendant Bank of America, N.A. (hereinafter "Bank of America"), is a nationally chartered banking association and former owner of the Debtor's loan. Bank of America is a federally insured depository institution that may be served in accordance with Rule 7004 by service of process by certified mail addressed to an officer of the institution.

## FACTS

14. Prior to the filing of her bankruptcy case, on October 26, 2006, the Debtor received a mortgage loan (hereinafter "the Loan") in the amount of $135,000.00 taken with Countrywide Home Loans, Inc. (hereafter "Countrywide"), and secured by her primary residence at 154 X. A. Wilson Rd., Lucedale, MS 39452.

15. The Loan was a "federally related mortgage loan" as that term is defined by 12 U.S.C. §2602(1) of the Real Estate Settlement Procedures Act and the regulations promulgated thereunder (Regulation X, 12 C.F.R. 1024.2(b)).

16. As security for the Loan, Countrywide filed a Deed of Trust against the residence in question, and listed itself as Lender, ReconTrust Company, N.A. as Trustee, and MERS as Nominee for Countrywide.

17. At some point after the purchase, the Loan was transferred to Bank of America.

18. On or about March 25, 2011, Debtor entered into a Home Affordable Mortgage Program Agreement (hereafter "HAMP Agreement") with Bank of America.

19. Among the terms of the HAMP Agreement, it was provided that if Debtor remained current on the modified mortgage payments, the non-interest bearing principal would be forgiven at the rate of $15,827.40 each year over the subsequent three years, on the condition that the Debtor remained current on her modified mortgage payments.

20. Debtor, in accordance with the HAMP Agreement, stayed current with the modified mortgage payments at least through the first year. As a result, the first payment due for 2012 evidenced a corresponding reduction of $15,827.40 from the "Non-Interest Bearing Principal Balance" portion of the loan.

21. When mortgage servicing was transferred from Bank of America to SLS, Debtor became confused about her payments and the applicability of the loan modification to the new servicer. Subsequently, she defaulted on her payments under the mortgage.

22. The mortgage servicing was later transferred from SLS to Shellpoint and the Debtor continued to fall behind on her mortgage payments.

23. Ultimately, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on March 17, 2017, in the above-styled and numbered cause.

24. On June 1, 2017, subsequent to the filing of Debtor's petition for relief, The Bank of New York Mellon as holder of the mortgage note in question, filed a Proof of Claim in the amount of $142,612.89 pursuant to a "money loaned" basis and allegedly secured by a mortgage note on the Debtor's principal residence.

25. The proof of claim also asserted that the loan had an outstanding arrearage of $47,055.50

26. The sum of $47,055.50 included the deferred, non-interest bearing principal of $31,654.79.

27. Counsel for Debtor sent a Request for Information to Shellpoint Mortgage on April 6, 2017, requesting (among other things) "a current an itemized statement of the amount needed to pay off the mortgage loan…" A copy of this Request for Information is attached as Exhibit A.

28. Records show that the Request for Information was received by Shellpoint at P.O. Box 10826, Greenville, SC 29603-0826 on April 13, 2017. This documentation is attached to Exhibit A.

29. P.O. Box 10826, Greenville, SC 29603-0826 is Shellpoint's designated address for receipt of Notices of Error and Requests for Information under Regulation X: 12 C.F.R. §§ 1024.35 and 1024.36.

30. Shellpoint Mortgage failed to provide counsel for the Debtor with an acknowledgment of receipt of, and response to the Debtor's April 6, 2017 Request for Information within the time period required by §1036(d)(2)(i)(A) and 1036(d)(2)(i)(B) of RESPA.

31. On July 3, 2017, Counsel for Debtor sent a Notice of Error to Shellpoint Mortgage for failure to respond to the April 6, 2017 Request for Information. This is attached as Exhibit B.

32. Records show that the Notice of Error was received by Shellpoint at P.O. Box 10826, Greenville, SC 29603-0826 on July 10, 2017. This documentation is attached to Exhibit B.

33. In a letter dated July 12, 2017, Shellpoint Mortgage acknowledged receipt of the July 3, 2017 Notice of Error, stating that it would provide a written response within 15 days.

34. In a Letter dated July 14, 2017, Shellpoint identified the owner of the Mortgage Loan as The Bank of New York Mellon and stated that Shellpoint was "working to gather the requested information and that that information would be forwarded as soon as possible.

35. In correspondence dated July 24, 2017, Shellpoint produced a letter responsive to the July 3, 2017 Notice of Error. Relevant excerpts of this correspondence are attached as Exhibit

       C. This letter also included information that Shellpoint asserted was sent in response to the April 6, 2017 letter sent by Debtor's Counsel.

36. The correspondence dated July 24, 2017 contained, among other items, a loan history that started on December 27, 2012 and ended on April 25, 2017.

37. In Response, Counsel for the Debtor sent correspondence to Shellpoint entitled "Notice of Error" dated August 2, 2017. This letter is attached as Exhibit D.

38. Records show that the Notice of Error was received by Shellpoint at P.O. Box 10826, Greenville, SC 29603-0826 on August 9, 2017. This documentation is attached to Exhibit D.

39. The August 2, 2017 letter from Debtor's counsel requested a full life of the loan transaction history and was a "Request for Information" under Regulation X, 12 C.F.R. §1024.36.

40. Although Shellpoint responded to this letter, the attached documentation did not contain a full loan history. Shellpoint never produced a full life of the loan history nor did it explain why it could not do so.

41. As a result of Shellpoint's actions, the Debtor became confused and distraught over the handling of her mortgage note.

42. The inability of the Debtor to clearly and fully understand the terms and handling of her mortgage note has caused the Debtor to be severely agitated, annoyed, traumatized, emotionally damaged and has otherwise unduly inconvenienced the Debtor.

43. Further, the inability of the Debtor to clearly and fully understand her obligations under the mortgage note has caused the Debtor embarrassment.

44. The mishandling of Debtor's mortgage loan was the primary cause of the Debtor's need to file Chapter 13 relief.

45. The failure of Shellpoint to respond to the Debtor's questions regarding her loan modification was a factor in the Debtor's subsequent default in her mortgage obligations.

**FIRST CLAIM FOR RELIEF**
**(Request for Accounting from Defendants Bank of America, SLS, and Shellpoint)**

46. The foregoing allegations of this complaint are realleged and incorporated herein by this reference.

47. Despite numerous requests and requirements under the bankruptcy code and RESPA, Shellpoint failed to account for a complete loan history.

48. Shellpoint has been unable or unwilling to provide a full accounting of the Debtor's mortgage loan from the date of the first default through the date of the Debtor's filing for Chapter 13 Relief.

49. The entire loan history is necessary to determine the extent of Shellpoint's current claim against the Debtor.

50. The Debtor therefore requests that Bank of America, SLS, and Shellpoint each produce a full accounting of the loan from March 25, 2011 until the date of their respective servicing or ownership transfer.

**SECOND CLAIM FOR RELIEF**
**(Contempt for Failure to Comply with 3001 Against Defendants:**
**Shellpoint and Bank of New York Mellon)**

51. The foregoing allegations of this complaint are realleged and incorporated herein by this reference.

8

52. Per Rule 3001 of the Federal Rules of Bankruptcy, a secured claim that is secured by the Debtor's principal residence must be filed with the official mortgage proof of claim attachment.

53. On [date], Shellpoint filed a Proof of Claim in the Debtor's Chapter 13 bankruptcy case on behalf of Bank of New York Mellon as the creditor.

54. The mortgage proof of claim attachment requires, among other things, that the Claimant disclose loan payment history from the first date of default. See (Claim 6, p. 4).

55. Part 5 of the claim filed by Claimant in this case begins its history with February 22, 2013; however, its corresponding description is "Property Inspection Fee".

56. Either the property inspection fee was erroneously applied to a mortgage that was current, or February 22, 2013 was not the first date of default.

57. The Bank of New York Mellon is responsible for the conduct of Shellpoint through the doctrine of *respondeat superior*.

58. Shellpoint and the Bank of New York Mellon should be sanctioned for their failure to comply with Rule 3001 of the Federal Rules of Bankruptcy Procedure.

### THIRD CLAIM FOR RELIEF
### (False and Misleading Proof of Claim by Defendant Shellpoint and Bank of New York Mellon)

59. The foregoing allegations of this complaint are realleged and incorporated herein by this reference.

60. The Proof of Claim filed by Shellpoint lists the unpaid principal balance at $131,744.85, and the prepetition arrearage at $47,055.50.

61. This information conflicts with the information provided by Shellpoint in response to the Debtor's Counsel's Qualified Written Requests.

9

62. This information conflicts with a proper amortization of the loan and since Shellpoint has failed to maintain a full record of the account, it will be impossible to determine what the true balance should be without discovery from the Defendants.

63. The Proof of Claim is False and misleading as it fails to disclose the correct balances of Principal and Interest due on the loan.

64. Shellpoint should have known that the Proof of Claim it filed in this case was false and misleading.

65. As a result of the false and misleading proof of claim, the Debtor has suffered an injury in fact in the form of emotional distress and stress regarding the feasibility of her Chapter 13 plan.

66. The Bank of New York Mellon is responsible for the conduct of Shellpoint through the doctrine of *respondeat superior*.

67. This Court has the authority under 11 U.S.C. §105 to sanction Shellpoint and the Bank of New York Mellon for filing a claim that it knew or should have known was false.

68. Sanctions are appropriate in this case due to Shellpoint's failure to correct errors with the proof of claim, even after Objection by Debtor's Counsel.

## FOURTH CLAIM FOR RELIEF
### (Violations of RESPA by Defendant Shellpoint)

69. The foregoing allegations of this complaint are realleged and incorporated herein by this reference.

70. Shellpoint is a "Servicer" for purposes of RESPA.

71. The Loan is a "Federally Related Mortgage Loan" as it is secured by a lien on residential real property designed principally for the occupancy of one to four families and the lender's accounts are insured by an agency of the federal government.

10

72. RESPA prohibits servicers from "fail[ing] to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. §2605(k)(1)(C).

73. Accordingly, Shellpoint had a duty to correct errors with the Debtor s' account.

74. Shellpoint had a duty to accurately respond to Debtor s' requests regarding the account balance and past due balance.

75. Shellpoint had a duty to accurately respond to Debtor s' requests regarding the life of the loan transaction history.

76. Shellpoint failed to accurately respond to the Debtor s' requests specifically, Shellpoint failed to provide the full life of the loan history upon request of the Debtor.

77. Shellpoint failed to correct errors with the Debtor s' account.

78. The violations of RESPA by Shellpoint caused the Debtor s to suffer harm.

79. The Bank of New York Mellon is responsible for the conduct of Shellpoint through the doctrine of *respondeat superior*.

80. Accordingly, Shellpoint and the Bank of New York Mellon should be ordered to pay to the Debtor s actual damages, statutory damages, punitive damages, and attorneys' fees.

### FIFTH AND FINAL CLAIM FOR RELIEF
(**Violations of the Fair Debt Collection Practices Act by Defendant Shellpoint**)

81. The foregoing allegations of this complaint are realleged and incorporated herein by this reference.

82. Shellpoint, at all material times herein, was a "debt collector" as that term is defined in 15 U.S.C. §1692a(6).

11

83. Shellpoint, as a debt collector, made false and misleading representations to the Debtor in violation of 15 U.S.C. §1692e(2) when it mischaracterized the "deferred P&I" as "arrears" as it pertained to the outstanding balance of the mortgage note in question.

84. The HAMP modification deferred $47,482.19 of the loan's principal balance and forgave $15,827.40 of that amount per the terms of the Debtor's modification.

85. As a result, even in the event the Debtor failed to comply with the terms and conditions after the first year, $31,654.79 of the balance would still be deferred principal; it would just not be eligible for forgiveness because of the late payments.

86. The terms of the HAMP modification do not classify this deferred principal as an arrearage, nor do such terms require the deferred principal balance be paid to bring the mortgage current.

87. By classifying the deferred principal balance of the mortgage as arrearage, Shellpoint made a false representation of the character, amount, or legal status of a debt in violation of 15 U.S.C. §1692e(2).

88. The foregoing acts and omissions by Shellpoint constitute violations of the FDCPA, 15 U.S.C. §1692f(1) by collecting or attempting to collect amounts not permitted by law and by otherwise using unfair and unconscionable methods.

89. Shellpoint additionally violated 15 U.S.C. Section 1692d by engaging in conduct the natural consequences of which was to harass, oppress, or abuse any person in connection with the collection of a debt.

90. The Bank of New York Mellon is responsible for the conduct of Shellpoint through the doctrine of *respondeat superior*.

91. Based on Shellpoint's actions in violation of the Fair Debt Collection Practices Act, the Plaintiff is entitled to actual damages, statutory damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k.

WHEREFORE, the Plaintiff, having set forth his claims for relief against the Defendants, respectfully prays of the Court as follows:

A. That Bank of America and Specialized Loan Servicing be ordered to produce records pertaining to their respective handling of the Debtor's mortgage loan.

B. the Plaintiff have and recover against Shellpoint, a sum to be determined by the Court in the form of reasonable expenses and attorneys' fees for Shellpoint's willful violation of Rule 3002.1 of the Federal Rules of Bankruptcy Procedure;

C. That a sanction be levied against Shellpoint for its violation of 11 U.S.C. § 105, in the manner of reducing the amount of the Claim, awarding damages to the Debtor and the Chapter 13 estate, and commanding Shellpoint and the Bank of New York Mellon to pay attorneys' fees to Plaintiff's counsel.

D. That the Plaintiff recover from Shellpoint and the Bank of New York Mellon actual and statutory damage for its violations of Regulation X.

E. That the Plaintiff recover from Shellpoint and the Bank of New York Mellon both actual and statutory damage for its violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.*; and

F. That the Plaintiff have and recover against Shellpoint and the Bank of New York Mellon all reasonable legal fees and expenses incurred by his attorneys pursuant to the fee shifting provisions of Rule 3002.1, the Fair Debt Collection Practices Act, RESPA, and the inherent sanction powers of this Court;

G. That the Plaintiff have such other and further relief as the Court may deem just and proper.

This the 31st day of October, 2017.

                                    Respectfully submitted,

                                    /s/Michael T. Ramsey
                                    MICHAEL T. RAMSEY, Atty for Debtor
                                    Sheehan Law Firm, PLLC
                                    429 Porter Avenue
                                    Ocean Springs, MS 39564
                                    (T): 228-875-0572
                                    (F): 228-875-0895
                                    MS Bar No. 104978
                                    mike@sheehanlawfirm.com